# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | | |
|---|---|---|
| STACY TEBO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 6:16-cv-1599-GAP-DCI |
| | ) | |
| CITY OF DEBARY, FLORIDA, and | ) | |
| LEO DANIEL  PARROTT, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

### PLAINTIFF STACY TEBO'S MEMORANDUM IN OPPOSITION TO THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 29)

Plaintiff STACY TEBO, through undersigned counsel, opposes the motion for summary judgment filed by the Defendants (Doc. 29) and states as follows:

### OVERVIEW OF THE CASE AND THE MOTION FOR SUMMARY JUDGMENT

Plaintiff STACY TEBO, a female, alleges that she was subjected to disparate treatment and discrimination based on her gender and to retaliation for her complaints of discrimination to the City and the EEOC as to how she and other female employees were treated by Defendants CITY OF DEBARY, FLORIDA and City Manager LEO DANIEL  PARROTT.

In the Motion for Summary Judgment, Defendants deny that Plaintiff was subjected to gender discrimination or that she was fired out of discriminatory or retaliatory animus, claiming instead that Plaintiff Tebo "was fired as a result of a number of incidents of insubordination and acts of disloyalty." (Doc. 29, p.3)  Defendants are simply wrong and summary judgment should be denied as to all claims.

### Material Facts in Dispute - Rebuttal of Defendants' "Facts of Record"[1]/

_____

[1]/In this Memorandum, Plaintiff tracks the order of Defendants' Summary Judgment Motion, to facilitate the Court's review.  Plaintiff identifies the disputed material facts contained in Defendants' "Facts of Record" and provides additional facts and record cites to identify genuine issues for trial.

Defendants claim its City Clerk Tebo "was fired as a result of a number of incidents of insubordination and acts of disloyalty." (Doc. 29, p.3).   However, Tebo's purported acts of insubordination and disloyalty identified were complaints made by Tebo to City's council members about City Manager Parrott's discriminatory actions and comments. (Doc. 29, pp. 4-5).

Tebo testified that she complained to Parrott about his conduct but to no avail:  "I told Mr. Parrott himself on numerous occasions that I didn't appreciate his comments. There were some instances in which I did not verbalize my disdain.  Instead, I would give him a dirty look so he would know I was not pleased with his dialogue."  (Doc. 35-1, Tebo's FCHR Affidavit, p.5) *(Plaintiff has submitted TEBO's FCHR Affidavit along with only the exhibits cited in this Memorandum).*  Only the City council was above Parrott, but the City's Personnel Manual failed to provide any mechanism for employees to complain about the City Manager. (Doc. 29-4, 22:14-15) ("there was no one for me to go to.  There was no process in place.").

City claims Tebo was fired in part due to disloyalty to Parrott, that she worked to get him fired and complained about him to City council members.  (Doc. 29, p. 4)  However, Tebo owed her loyalty to the City as her employer, not to the City Manager.  That loyalty to her employer required her to report the misdeeds of the City Manager that could cause liability to the City, and the City's Personnel Manual required her to report discrimination:

> While overall authority for implementing this policy is assigned to the City Manager, an effective equal employment opportunity program cannot be achieved without the support of supervisory personnel and employees at all levels. Any employee who feels that he or she is a victim of discrimination has a responsibility to report this fact to their supervisor and/or the City Manager.

(Doc. 35-2, DeBary Personnel Manual, §104.0 #5, p. 10).  Tebo testified that she reported Parrott's sexist comments to two council members with whom she had been friends since childhood, until Parrott

---

Additional material facts in dispute are contained elsewhere in the Memorandum where necessary to either oppose the facts stated by Defendants or to flesh out the legal arguments.

told her to stop complaining about him to council members in November of 2014.  (Doc. 29-4, 21:20 -

22:19).  Former council member Koval stated under oath that Tebo told him in December of 2013 about

Parrott's sexist remarks and preference for hiring men.  (Doc. 35-3, Koval Aff., p. 2).

Contrary to City's assertion at Doc. 29, p. 4, Tebo testified that she did not subsequently

complain about Parrott to any council member.  Instead, immediately following where Defendants

ended its pinpoint citation to her testimony, she explicitly denied doing so, answering "No" to the

question "And even after that conversation, you continued to complain to City council members

about Dan Parrott?" (Doc. 29-4, 22:25-23:2)   City also distorts Tebo's testimony about complaining

to City Council members is  "a good way to get fired" by taking it out of context:  However, Tebo said

this after she denied making any further complaints about Parrott to council members after he told her

not to do so – she did not "nonetheless continue" to complain about Parrott. (Doc. 29-4, 21:20 - 23:8).

In a gross distortion of the deposition testimony cited, City wrongly states that it is undisputed

that Tebo wanted to get Parrott fired (Doc. 29, p.4). However, Blissett testified only that Tebo did not

like Parrott's management style and thought "the City may be better under a different City manager."

(Doc. 29-3, 68:1-12).  Moreover, in her deposition, Tebo testified she "did not want to get him fired.

I thought he was going to quit."  (Doc. 29-4, 28:13-19).

Subsequent to Parrott's admonition to not complain about him to council members, Tebo only

telephoned a council member, not to complain about Parrott but to ask a question about why he moved

to remove her from her position as City Clerk, and replaced her with the City Manager, at the April 1,

2015 council meeting.[2]/  Although City did not raise this issue directly in its Motion, this conversation

is one of the listed reasons for discharge in the April 17, 2015 termination letter.  (Doc. 29-1, p. 21)

The facts are in dispute as to the content of the conversation: Tebo testified that she did not complain

---

[2]/At that same meeting, the council unanimously agreed on a separation agreement for Parrott
(Doc. 35-8) but he continued as City Manager until over a year later. (Doc. 35-9)

about Parrott in that conversation and was not in violation of Parrott's admonition; instead she asked Council member Dwyer why he made the motion to remove her as City Clerk and to appoint Parrott as City Clerk instead.  When Dwyer responded that he could not answer because of the executive session, Tebo discontinued the call.  (Doc. 29-5, 75:10 - 76:15)   Notably, the City has presented no evidence from that city council member Dwyer as to the content of his conversation with Tebo.  A jury could conclude that Parrott had no reasonable belief that Tebo had "persisted" in talking with Dwyer about the confidential conversations of the executive session, that instead Parrott's version was used as a pretext for discrimination or retaliation.

Regarding Tebo encouraging other employees to complain about the City Manager, Tebo testified that she sought for other women to get involved and only after the assistant City manager was fired, for strength in numbers before the EEOC. (Doc. 29-4, 30:11 - 31:7.)

Defendants contend that Parrott made his decision to terminate Tebo on March 19, 2015 when he received a report from Mayor Johnson regarding a conversation he had with Tebo.  (Doc. 29, p.5) The content and circumstances regarding the discussion between Mayor Johnson and Tebo following a City Council meeting are material facts in dispute.  Parrott says Tebo raised with the Mayor reasons for terminating Parrott and that she opined on how other council members might vote.  (Doc. 29, p.5) Tebo denies that she raised the subject and that she only responded to questions from the Mayor, saying nothing critical about Parrott to the Mayor.  (Doc. 29-5, 79:24 - 81:10)

On March 18, 2015, following a council workshop, when Tebo went to the Mayor's office to tell him she was leaving and he was the last one there, the Mayor brought up the issue of firing Parrott[3]/ and asked Tebo how she thought others on the council would vote.  Contrary to Defendants' assertion,

---

[3]/According to a former council member, the Mayor was "adamant that Parrott needed to go" in a conversation they had in October 2014  (Doc. 35-3, p. 3) which makes it reasonable that he Mayor not Tebo would have brought up the subject.

Tebo did not give her opinion on that, other than to say that the vice mayor Lita Handy-Peters was always very supportive of the City Manager. The Mayor also asked Tebo questions about the Assistant City Manager who had recently been let go and about the email archive system. (Doc. 29-5, 77:16 - 80:19; 81:1-10). Notably, Defendants have produced no contemporary documents, testimony or affidavit from the Mayor or other evidence to prove the content and circumstances of the discussion between the Mayor and Tebo. A jury can reasonably conclude that Parrott had no reasonable belief that Tebo would have said such things to Johnson, someone she barely knew, that this issue is just a pretext for discharging Tebo, that the real issue here is that he was grasping for a basis to fire Tebo because she filed her EEOC letter complaint and delivered it to Parrott.[4]/

<u>Barry Maguire Public Records Request</u>

Defendants identify another reason for Tebo's termination as being related to a public records request by a citizen, Barry Maguire. (Doc. 29, p. 5). According to Maguire's Affidavit, in the week of March 9th, 2015, following the termination of the assistant City manager, Barry Maguire made a public records request for Parrott's emails. At the time Maguire made his request, Tebo was already responding to numerous other requests at the time, and she informed him that she would try to get his request filled by the end of the week. (Doc. 35-4, p. 2, #6) Tebo testified that she tried to send out the documents on Friday, March 13, 2015, but they were apparently rejected by Maguire's email service so she spoke with Eric Frankton, the City's outside IT consultant, for assistance and eventually split up the documents and sent them to Maguire the following week. (Doc. 29-5, 34:2-35:10). Maguire and Frankton exchanged some testy emails regarding the problems with the transfer of the documents, with Maguire accusing Parrott of being responsible ("I suspect that this blocking may be intentional

---

[4]/On March 16, 2015, Tebo faxed to the EEOC and hand-delivered to Parrott a letter to the EEOC that she called a Charge of Discrimination in which she details her complaints against Parrott. (Doc. 29-1, pp. 67-68). To differentiate between this letter and the formal Charge of Discrimination later filed with the EEOC (Doc. 35-7), it is referred to herein as her "EEOC letter complaint."

and requested by ordered by *[sic]* the City Manager who is under severe scrutiny at this time.") (Doc. 35-6)  The email exchange makes it clear that it is undisputed that there was confusion and problems of which Frankton was aware and Parrott had to be as well since he was cc'd on the email exchange.

Defendants claim Tebo failed to provide Parrott with a full set of the documents she provided to Maguire purportedly based on a review done by the City's outside IT person of the City's email archive system, and that she "has no evidence that Parrott did not reasonably believe that she failed to provide him with a complete copy of the Maguire public records response."  (Doc. 29, pp. 5-6) Defendants are wrong; Tebo does have evidence that Parrott had no such reasonable belief and that it instead is a pretextual reason given for her termination.  Despite the claim by Parrott in the termination letter that review of the records showed that Tebo had deliberately attempted to sanitize what was sent to him, Parrott and the City failed to maintain the evidence that purportedly supported that accusation. (Doc. 29-2,181:7 - 182:6).   A jury could reasonably conclude the analysis comparing the emails Tebo sent to Maguire versus what she sent to Parrott was not kept because it did not support the claimed basis for terminating Tebo.  The failure to retain that analysis can also be evidence to rebut Parrott's claimed reasonable belief that Tebo intentionally failed to provide him with a complete set of the emails.

Moreover, initially, Parrott planned to fire Tebo for improperly accessing his emails and the emails of the council members.  (Doc. 29-2, 127:24-128:7).  However, there were public records requests for his emails to which Tebo was responding that necessitated accessing his emails.  One such request was by citizen Barry Maguire.  (Doc. 29-5, 33:22 - 34:6 and Doc. 35-4, Maguire Affidavit, p. 2 #6).  Another was by another then former-council member Nick Koval who confirmed he was one of those persons making such public records requests, due to Parrott's termination of the assistant City manager and her EEOC Charge of sex discrimination.  (Doc. 35-3, Koval Aff.,  p. 3).

Three days following receipt of her EEOC complaint letter, Parrott accused Tebo of improperly accessing his emails and those of the council members and he removed from Tebo a major part of her

job responsibilities, responding to public records requests (Doc. 35-5, p.1), replacing her with a male who had zero training in the intricacies of and legal requirements for responding to public record requests.  (Doc. 35-5, p.2 )  A jury could conclude that, once Parrott reviewed the documents sought by Maguire and discovered they were his emails so Tebo was not inappropriately accessing his emails, Parrott figured out he needed a different reason to try to justify his termination of Tebo, establishing both pretext and causation.  Despite having thought Tebo was trying to get him fired and despite having other issues with her previously, Parrott had not considered firing her or eliminating her position of City Clerk prior to her  EEOC letter complaint on March 16, 2015.  (Doc. 29-2, 126:12 - 128:7).

Indeed, in the March 19, 2015 email from Parrott to Tebo in which he removed her duties as the records management liaison for the City, Parrott cited specifically that she was inappropriately accessing emails and that she had filed an EEOC Charge of Discrimination.  (Doc. 35-5, p.1)  The timing (three days after receiving her EEOC letter complaint) and the specific mention of the EEOC letter complaint in the email can be evidence of discrimination, retaliation and pretext.

In a letter supplementing the reasons for discharge, Parrott claimed that Tebo had improperly created, maintained and used an email account "in her own name."  (Doc. 29, p. 6).  The gmail account was not in her own name, as Defendant falsely states, but was "cityofdebary@gmail.com" and Tebo explained in her deposition that she had created the account several years earlier after talking with Frankton, the City's IT person, about how to handle the electronic transfer of large amounts of documents.  Frankton had made several recommendations, including DropBox and Google Drive, which she discussed with Parrott. After her termination, she provided the City with the gmail password and login information. The gmail account was opened using her personal cell phone number because Google required a cell phone for the account and Tebo had no City-issued cell phone.  (Doc. 29-5, 59:17 - 64:16).  City asserts without any record citation that Parrott denies any knowledge of the separate email account. (Doc. 29, p.6)  Parrott may deny that he was aware of Tebo's use of the Google

Drive but Tebo had explained it in a Questionnaire done regarding the City's pay study and Parrott had reviewed that document.  (Doc. 35-1, p.3; Doc. 35-10)

### Tebo's Claims:  Sex Discrimination Claim

Defendants minimize the sexually discriminatory comments made by Parrott (Doc. 29, p. 6) which were verified by the assistant city manager Kassandra Blissett who also testified that Parrott "routinely" made comments denigrating women and stating that he did not want to hire a woman for the finance director position. (Doc. 29-3, 33:21 - 34:13; 35:5 - 36:3; 38:12 - 39:2).  Without any record cite, Defendants falsely claim that Tebo "raised no complaints to Parrott" (Doc. 29, p. 6). However, the record evidence shows that Tebo did indeed complain directly to Parrott (Doc. 35-1, p. 6) and that Parrott was well aware that Tebo had complained about his sexist comments and actions to several council members, as he himself testified (Doc. 29-2, 136:13-22, 137:8-11).

Defendants argue that Tebo could not have suffered sex discrimination or a hostile work environment because she did not shrink from asserting herself and requesting pay raises and other demands and that despite the claimed discriminatory and hostile environment, she still got favorable evaluations.  (Doc. 29, p.6)   Tebo contends this assertion is itself imbued with sexism.  A strong woman working in a discriminatory work environment where sexually degrading comments are made does not necessarily shrink and fail to be assertive simply because the decisionmaker is sexist.  Tebo sought and got raises in her pay because she was able to articulate justifications for the raises and she got favorable work evaluations because she is a hard worker who conscientiously performed her job duties. (Doc. 35-1, p.5).  Parrott is no less of a sexist for appropriately treating Tebo in these areas. However, Parrott's draft of her 2014 evaluation had downgraded her in three categories, reflecting his discriminatory and retaliatory animus against her for having pursued the complaint of Kendra Kabbas of a sexual comment made by her supervisor and for having complained about Parrott's sexist comments and actions to several City Council members.  Parrott revised the review after a meeting with

Tebo, in which Parrott expressed his displeasure with Tebo complaining about him to council members and obtaining her commitment to not do so anymore.  (Doc. 35-1, pp. 12 -13 & Doc. 35-11, *compare to* final review, Doc. 29-1, pp. 4-7) .  While the official review no longer contains the objectionable portions and on its face was an excellent review, it was clear from their discussion that Parrott used intimidation to try to keep Tebo from any further reports to council members about his sexist comments and actions. Indeed, Tebo reports that Parrott said during that conversation: "I can fire you whenever I want to, and I haven't done that yet." (Doc. 35-1, p. 12)

Defendants also wrongly imply that Parrott could not be a sexist who did not want to hire or work with women, since he hired Kassandra  Blissett as his Assistant City Manager,  replaced the City's retiring male finance director with a female, and made Tebo a direct report.  (Doc. 29, pp.6-7).  However, Blissett had been the interim city manager before Parrott was hired, was offered but rejected the position of City Manager, and the City Council asked Parrott to hire her as the Assistant City Manager, which was an open position.   (Doc. 29-4, 28:25 - 29:17).

Regarding the replacement of the male finance director with a female, during the meeting regarding Tebo's 2014 evaluation, Parrott said "l don't know what you want from me. I didn't want to hire a woman, but I did. Liz is here now, so you should both be happy." (Doc. 35-1, p. 13).  Parrott had delayed replacing the male finance director because he was unable to locate a male replacement, stating he did not want to hire anymore women and that "there's too much estrogen upstairs." (Doc.  35-1, p. 6).  That he ultimately hired a woman does not negate the fact that he did not want to do so.  Jimmie Seelbinder, the male finance director who was to be replaced, stated that Parrott told him that "he did not want to hire another woman." (Doc. 35-12, p. 2, #6).  As stated previously, Tebo also related Parrott's sexist statements to several council members, along with information regarding why the male finance director  withdrew his resignation and the amount of money being paid to keep him in place while Parrott continued to search for a male replacement.  (Doc. 35-3, p. 2).  A jury may reasonably

infer that a council member may have told Parrott that he needed to hire the most qualified applicant instead of waiting for a qualified male applicant, based on the angry tone Tebo reports he discussed with her his displeasure at her speaking with the council members about him (Doc. 35-1, pp. 12-13).

Defendants also state (without record cite) that Parrott made Tebo a direct report to him (Doc. 29, p. 7) as purported evidence that he did not treat women in a discriminatory manner.  However, Tebo testified that her position of City Clerk was always under the City Manager in the budget, rather than under the finance director, and when Parrott was hired, he made the decision to make her a direct report to him.  (Doc. 29-4, 9:19 - 12:3).  Moreover, having a woman be a direct report to him, is hardly any sort of evidence that Parrott does not treat women unequally or make sexist comments. .

### Kendra Kabbas Complaint

Defendants next argue that Tebo wrongly contends that Parrott's conduct regarding a departing female employee's complaint about a sexist comment made by her supervisor is evidence of his discriminatory animus.  (Doc. 29, p.7).  Kendra Kabbas complained in her exit interview that "some inappropriate comments made by supervisors did make it uncomfortable sometimes, (i.e. comments about cleavage, sexiness." (Doc. 29-1, pp.35-36, ¶¶9 & 12).  Tebo showed this to Parrott and he said to do nothing about this complaint since it failed to name the person reported to have said the inappropriate remarks.  Defendants disingenuously state - and Tebo disputes - that "[d]espite having been instructed by Parrott not to contact her, Tebo allowed Kabbas to enter City offices after 5 pm and fill out a form clarifying complaints she made about her supervisor, Mr. Fletcher, in her employee exit form." (Doc. 29, p.7).  Tebo did not violate Parrott's instruction: she did not contact Kabbas about her employee exit form.  Instead Kabbas came to Tebo as City's human resources person to fill out a form Kabbas needed for DCF.  While there, Kabbas asked about her complaint and Tebo explained Parrott's response was that there was nothing to do since she failed to identify the person and the comments made.  Kabbas then asked for the form back and she added some additional language, identifying

Fletcher and detail regarding his comments.  (Doc. 19-1, p. 37; Doc. 29-4, 24:10 - 25:18; Doc. 29-5, 47:21 - 52:11).  As a "punishment" of Tebo's handling of this employee complaint of discrimination, Parrott took away Tebo's human resource responsibilities several months later (in March of 2014) and gave them to Blissett.  (Doc. 29-3, 36:18-22).

The extent and timing of any investigation by Parrott to the Kabbas complaint is disputed. (Doc. 29, p.7) First, Parrott showed his disinclination to investigate the matter when he told Tebo that the complaint contained insufficient information.  When she offered to get more information, he told her not to.  He did not say that he was going to investigate it.  Instead, he clearly planned on ignoring the complaint of Kabbas, as Defendant's counsel asked Tebo:

> Q· · You knew full well when Mr. Parrott told you not to contact her that he was trying to get you to let sleeping dogs lie with regard to Ms. Kabbas's complaint, correct?
>
> A· · I figured that he did not want to do anything with that  complaint.

(Doc. 29, 50: 1 - 5).  The City's position appears to be that it was somehow appropriate for Parrott to just try to bury the complaint, rather than to investigate it to ensure that other women under the supervision of Fletcher were not also being subjected to discriminatory comments and actions.  An employer is on notice when even informal complaints about discrimination are made, *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1311 (11th Cir. 2016), and the City's personnel manual squarely places that responsibility on the City Manager. (Doc. 35-2, Section 105.0 (establishing that workplace should be free of discrimination and requires City Manager to investigate complaints "promptly and in as impartial and confidential a manner as possible.").  It is undisputed that no one from the City ever contacted Kabbas to investigate her complaint against Fletcher. (Doc. 35-14,  p. 3).  No appropriate investigation can be done without the details from the complainant.

Indeed, instead of doing an investigation on the complaint of Kabbas, Parrott instead turned it into an investigation about Tebo, as can be seen by the attachments to his memorandum purportedly

written on March 19, 2014 (Doc. 29-1, pp. 40-43) and his handwritten notes (purportedly written in March of 2014, (Doc. 29-1, pp. 44-47).  Defendants claim Parrott interviewed "the relevant witnesses" and "found no proof of the misconduct claimed by Tebo." (Doc. 29, pp. 7-8)[5]/ But it was not Tebo who claimed misconduct –it was the employee Kendra Kabbas– who made the complaint and she was the only "relevant witness" since the comment was made by Fletcher to Kabbas and not in the presence of any other persons. Moreover, Blissett has stated the March 2014 interviews she attended with Parrott were about Tebo, not Kabbas, (Doc. 35-13, p.2)  A jury could reasonably infer discriminatory (and retaliatory) animus by Parrott for doing an investigation on Tebo because she had tried to get him to investigate the Kabbas complaint of sex discrimination and his use of that purported investigation as a basis for termination of Tebo over a year later, only days after Tebo filed her EEOC complaint letter.

Melanie Martinez

Defendants mention that another employee, Melanie Martinez, made a complaint "not of sexual harassment" but that "she was being unfairly assigned duties, excessively criticized, and not made to feel part of the team." (Doc. 29, p.8)  Defendants apparently fail to perceive that the complaint was of gender-based discrimination, that Martinez was complaining that she was treated differently than the men in her department. Parrott initially told Blissett that was a "'he said/she said' situation and that he had no intention of doing anything about it."  (Doc. 35-13, p. 3; Doc. 35-23, p.1) After Blissett convinced Parrott that an investigation should be done, Parrott had Tebo sit in on his interview of Martinez regarding her complaints about her supervisor.  The interview of Martinez was held on Friday, March 6, 2015; immediately following the meeting, Parrott told Tebo he was going to fire Fletcher. (Doc. 29-5, 25:20 - 26:18).  However, later that same day Kassandra Blissett, Assistant City Manager,

---

[5]/In the termination letter, Defendants state Tebo was fired in part for doing an inappropriate investigation of Kabbas' complaint and failing to tell Parrott about it. (Doc. 29-1, pp. 20-21).  Tebo claims she only asked several employees if they had witnessed anything and dropped it when they said they did not, and that she told Parrott about it.  (Doc. 35-22; Doc. 29-1, pp. 26-27; Doc. 35-1, p. 10)

filed her first EEOC Charge of Discrimination in which she, in part, discusses the discriminatory treatment of Tebo in the pay study because Parrott had reduced the City Clerk to a lower pay grade, claiming she was not a department head.  (Doc. 35-15; second EEOC Charge Doc. 35-24).  Parrott "laid off" Blissett the following Monday.  (Doc. 29-5, 74:16 - 75:3).[6]/  A jury could reasonably conclude that this evidence bolsters Tebo's claims that Parrott treated female employees including Tebo in a discriminatory manner, and this same evidence can bolster Tebo's retaliation claims – basically "me too" evidence showing the intent to discriminate and retaliate in support of her claims and to rebut City's defenses. *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F. 3d 1261, 1286 (11th Cir. 2008).

## Pay Study

Tebo argues that the way that Parrott manipulated the pay study was sexually discriminatory in that her pay grade was lowered and other female employees were not raised to market level, even though all of the male hourly employees were.  While Defendants are correct that "Tebo contends the results of the pay study were discriminatory to women," Tebo disagrees that "her contention is meritless," as Defendants claim.  (Doc. 29, p. 8).

First, contrary to Defendants' unsupported and disputed contention, the pay study did <u>not</u> conclude that all female administrative staff were paid a competitive wage: indeed, while all of the male hourly workers were increased to the market rate, three of the female office staff remained below market level (Annette Hatch, Colleen Bordine and Melanie Martinez) (Doc. 35-16, p. p.4).  The Pay

---

[6]/In an attempt to combat Blissett's EEOC Charge, Parrott claimed that Blissett was the one who created a hostile work environment after she had accused two male employees of subjecting a female employee to an intimidating and hostile work environment.  Those two male employees wrote memos in which they accused Blissett of creating a hostile work environment toward men, claiming that she preferred to work with women.  (Docs. 35-19 and 35-20)  FCHR Exhs 24-1, 2, 4).  Parrott's narrative (Doc. 35-21) about what occurred in the interview of Melanie Martinez regarding her complaint was skewed and contained incorrect facts and he failed to note that Tebo was present at that meeting.  (Doc. 35-1, p. 14)  A jury could reasonably conclude that Parrott's dissembling of the truth and manufacturing documents in the Blissett matter after the fact to attempt to justify his discriminatory actions show that he manipulated documents and facts to also created purported reasons to fire Tebo.

Study was commissioned for a broader purpose of examining the market rate for all employees, but was used selectively by Parrott to make adjustments.  (Doc. 29-3, 61:12-20; 63:8-19).  Although there was a high turnover of (female) administrative clerical positions as well, Parrott told Blissett to only focus on the (male) employees of Public Works and Parks and Recreation.  (Doc. 29-3, 59:18 - 60:20).

Tebo's complaint about the discriminatory nature of the Pay Study was that she was assigned a lower pay grade than the Department Heads, even though she was a Department Head.  Although the City claims –without any record reference– the assignment of paygrades was done by the consultant doing the pay study, Blissett testified that it was Parrott who determined what pay grades would be assigned to employees (Doc. 29-3, 63:8 - 64:13) and that Parrott had specifically dropped Tebo two grades lower than any other department head, to which Blissett objected (Doc. 29-3, 65:5-22)[7]/.  A jury could reasonably conclude that Parrott lowered Tebo's paygrade either out of a discriminatory or retaliatory intent, based on the timing of the implementation of the pay study.

In a gross mis-characterization of Tebo's testimony, Defendants wrongly claim that "Tebo did not file a charge of discrimination to protect her civil rights" but to push him to quit. (Doc. 29, pp. 9-10).  The testimony cited by Defendants for this statement is what Tebo said she thought would be Parrott's reaction to the filing of Blissett's EEOC Charge, not her own.  (Doc. 29-5, 44:8 - 45:1)

## Issues and Analysis: Claims I and II - Sex Discrimination against City

Tebo has made a prima facie case for discriminatory discharge. As a woman, she is a member of a protected class. Given the glowing evaluations she received prior to being discharged, she was certainly qualified to serve as City's City Clerk. She was fired and she was replaced by men: initially Eric Frankton took over her duties regarding public records requests and her other City Clerk duties

---

[7]/In his deposition, Parrott admitted that he rejected the pay ranges proposed by Burris and made other substantial changes to the pay study (Doc. 29-2, 38:3 - 41:12) and that Burris did not determine where employees would go in the step process (Doc.29-2, 42:34 - 43:6)

were taken over by Warren Graham and Parrott. (Doc. 292, 153:3 - 154:10). That is a prima facie case. *Ross v. Rhodes Furniture, Inc.,* 146 F. 3d 1286, 1290 (11th Cir. 1998)

However, Defendants argue that Tebo is unable to make out a prima facie claim of sex discrimination since there are no comparators because no males were insubordinate and complained to City Council members about Parrott (Doc. 29, p. 11), citing the *Rice-Lamar* case. However, that is a tortured reading of that case. The Eleventh Circuit held that summary judgment was appropriate in that case because the plaintiff did not dispute that she refused to alter substantially a document as directed by her supervisors, and she failed to present any evidence indicating that other insubordinate employees were treated more favorably. *Rice-Lamar v. City of Fort Lauderdale*, 232 F. 3d 836, 843 (11th Cir. 2000). Here, Tebo does not admit that she was insubordinate; instead she denies it: she stopped complaining to council members about Parrott once he told her to do so. So this is a red herring argument and not a standard that Tebo must meet. Instead, the similarly situated employees are simply male employees of the City. Tebo certainly has shown above that she was subjected to frequent degrading and sexist comments by Parrott that men were not subjected to and that her pay grade was dropped two grades while none of the male employee's pay grades were lowered.

Defendants next argue that even if she could make out a prima facie case, Tebo is unable to prove pretext. (Doc. 29, p.13). Tebo disagrees. "Provided that [an employer's] proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it." *Alvarez v. Royal Atl. Dev., Inc.*, 610 F.3d 1253, 1265-66 (11th Cir. 2010). "To show pretext, [an employee] must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Id.* at 1265.

Parrott's history of making sexist comments and failure to investigate complaints by women, when read in conjunction with the entire record, can be circumstantial evidence of his discriminatory

attitude and might lead a reasonable jury to disbelieve Parrott's proffered reason for firing Tebo. *Ross v. Rhodes,* 146 F. 3d at 1291.  *See also Price Waterhouse*, 490 U.S. 228, 272 (1989) ("stereotyped remarks can certainly be evidence that gender played a part" in an adverse employment action.)

Tebo has shown above that many facts claimed by City are untrue or unworthy of belief and, because of that, she "may succeed in establishing discrimination . . . by showing that the employer's proffered explanations are not credible. When that happens, the plaintiff may or may not ultimately prevail in the litigation, because the factfinder may or may not choose to make the permissible inference of discrimination." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1530 (11th Cir.1997).

Defendants appear to have collapsed the six reasons for termination stated in the two termination letters (Doc. 29-1, pp. 19 - 23), to one reason: "insubordination/disloyalty and public policy violations."  Tebo has rebutted the circumstances behind each of the reasons given in the termination letter in the fact section above, as well as in her appeal (Doc. 29-1, pp. 24-29), and she has shown she has evidence of pretext sufficient to allow her case to go forward to a jury at trial.

## Claims II and IV: Title VII and FCRA Claims of Retaliation by the City

Tebo can establish a prima face case of retaliation:  she engaged in protected activity in that she opposed the sex discrimination in the workplace and she participated in her EEOC Charge and that of Blissett which resulted first in removal of critical job responsibilities, then being suspended and then terminated from her employment. Tebo can show a causal connection by documents that on their face connect her opposition to sex discrimination and her participation in the EEOC Charges filed against the City and by the close proximity between her protected activity and the adverse actions.[8]/  Even if

---

[8]/From the date Tebo gave Parrott her EEOC Complaint letter: her responsibilities as the City's records management person were taken away four days later; her job of City Clerk was taken away on April 1, 2015 –just sixteen days later; and she was suspended from her employment and notified she was being terminated from her employment on April 17, 2015, just 32 days later.  The temporal proximity between the protected activity and the adverse employment actions were sufficiently close (continued...)

she fails to prove discrimination, she has shown she had a reasonable belief that she had been subjected to discrimination.  Moreover, she can establish pretext of the reasons given by the City by showing that they are implausible, inconsistent, incoherent, contradictory, or unworthy of credence, and that retaliatory motive instead was the reason for her discharge, as discussed above and below.

A) Opposition Clause:

Plaintiff contends that she opposed the discriminatory practices of the City in the following ways, discussed above: (1) she complained to the City Manager and several city council members that the City Manager made offensive comments about women on a regular basis; (2) she complained to the City Manager and several city council members that the City Manager expressed that he preferred to work with men; (3) she complained that she believed that she had been given lower marks on a performance evaluation due to having brought to the City Manager an exit interview that complained of a sexist comment made by a supervisor; (4) she complained about unequal pay, that she and other female employees were discriminatorily treated in their pay compared to the men; (5) she complained to the City Manager that she was personally subjected to sex discrimination by being put on a lower pay grade;  (6) she complained that the pay study being  implemented in a discriminatory manner, resulting in an average pay increase for the women far lower than for the male employees; (7) she complained of the retaliatory discharge of the assistant city manager; (8)  she complained that the City Manager treated male employees more favorably then the female employees.  Tebo also complained of all of these items in her EEOC letter complaint that was provided to Parrott. (Doc. 29-1, pp. 67-68).

These objections regarding the discriminatory practices of Parrott are objectively reasonable

---

[8](...continued)
to suggest causation. *See, e.g., Farley v. Nationwide Mutual Insurance Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) (finding a delay of seven weeks between the date on which plaintiff filed his EEOC charge and the date on which he was terminated "sufficiently proximate to create a causal nexus for purposes of establishing a prima facie case")

and are sufficient forms of opposition to establish her prima facie case of retaliation. For the reasons stated previously, she can show that the reasons asserted by Defendants are pretext for retaliation.

B) Participation Clause:

Defendants argue that Tebo's March 15, 2015 letter to the EEOC fails to meet the requirements of a formal EEOC Charge and therefore is not a protected activity under the participation clause. (Doc. 29, p.17) Defendants' tortured application of the facts and law are misguided: the date of the formal EEOC Charge filing is not the date by which the decision to fire her is measured against. Instead, protection is afforded a complainant even for informal or implicit complaints of discrimination. *Furcron v. Mail Centers Plus*, 843 F.3d at 1311. The EEOC logged Tebo's March 15, 2015 letter and opened an investigative file. (Doc. 35-17). "[O]ften [this is] the only way that such issues can be raised — by an individual drafting his charge as best he can without expert legal advice. This activity, essential as it is, must be protected." *Pettway v. Am. Cast Iron Pipe Co.*, 411 F. 2d 998, 1005 (5th Cir. 1969). Moreover, despite City's current stand that Tebo's letter to the EEOC was not effective as a protected activity, the evidence shows that the City and Parrott regarded it as an EEOC Charge on the day following receipt of her EEOC letter in the email drafted by counsel for the City. (Doc. 35-5, p.1: "Furthermore, as you know, you and former Assistant City Manager, Kassandra Blissett, have recently filed charges of gender discrimination with the EEOC against the City of Debary."). And, moreover, on April 1, 2015, the City Council held an attorney/client executive session to discuss the topic identified on the Public Notice and Agenda as "EEOC – Charge of Discrimination, Stacy Tebo v. City of DeBary" (Doc. 35-18) . These documents not only show that the City and Parrott treated Tebo's EEOC letter as a protected activity, but also is proof of causation.

Moreover, the City never addresses Tebo's protected activity in Blissett's fully executed EEOC Charge, which on its face mentions Tebo (Doc. 35-15) and satisfies the participation clause requirements. The statutory language of the participation clause is broad: "The words 'participate in

any manner express Congress' intent to confer "exceptionally broad protection" upon employees covered by Title VII.*" See Clover v. Total System Services, Inc.*, 176 F. 3d 1346, 1353 (11th Cir. 1999), *citing Pettway v. American Cast Iron Pipe Co.,* 411 F.2d 998, 1006 n. 18, and 1007 (5th Cir.1969).

As to the requirement that a plaintiff show causation, the Eleventh Circuit "construe[s] the causal link element broadly so that 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1278 (11th Cir. 2008) Defendants make no claim that any decision to fire Tebo pre-existed the EEOC filings. Tebo can show by the evidence described above that Parrott had no reasonable belief of the reasons cited by the Defendants for her termination, but that it was done instead out of retaliatory intent. Summary judgment should be denied.

## Count V: Unequal Treatment Section 1983 against Parrott

Defendant Parrott argues that he is entitled to qualified immunity under Section 1983, purportedly because the "record establishes mixed motivations, that is motivations both lawful and unlawful . . ." (Doc. 29, pp. 20-21). Parrott contends his "lawful" reason for termination was that Tebo was undermining him by complaining about his sexist remarks to the city council members in a purported "effort[] to force him out" (Doc. 29, p.22). Parrott's reasoning is mystifying: his "lawful" reason is the very essence of opposition to discriminatory practices, and an inappropriate extension of the cases Defendant cites. Tebo has produced evidence above rebutting the so-called "lawful" reasons for her discharge. This evidence is sufficient to allow a jury to determine whether gender or retaliation was a substantial or motivating factor in Parrott's decision to terminate Tebo's employment. *Martinez v. City of Opa-Locka, Fla.*, 971 F. 2d 708, 712-13 (11th Cir. 1993). Whether Parrott can meet his burden of proving that he would have fired Tebo in the absence of both discrimination and retaliation

is a credibility determination for the jury.[9]/  No qualified immunity should exist for Parrot and the motion for summary judgment on that issue should be denied.

## CONCLUSION

Credibility issues exist as to the purported reasons for Plaintiff's termination and genuine issues of material fact remains as to whether Defendants subjected Plaintiff to discrimination and retaliation. For the reasons stated above, Defendants' Motion for Summary Judgment should be denied in its entirety.

Respectfully Submitted,

*/s/Martha A. Chapman*
Martha A. Chapman
Florida Bar No. 0004464

Martha A. Chapman, P.A.
1219 E. Livingston Street
Orlando, FL 32803
Telephone: 407-896-4835
Fax: 407-574-7912
marty@martychapmanlaw.net

DATE:  May 21, 2018                            ATTORNEYS FOR PLAINTIFF

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, May 21, 2018, I electronically filed the foregoing and the attached exhibits with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel for the Defendants.

*/s/ Martha A. Chapman*
Martha A. Chapman

---

[9]/In discrimination claims brought under Title VII and § 1983, "an employee can succeed on a mixed-motive claim by showing that illegal bias, such as bias based on sex or gender, 'was a motivating factor for' an adverse employment action, 'even though other factors also motivated' the action." *Quigg v. Thomas County School Dist.*, 814 F.3d 1227 (11th Cir. 2016) (citations omitted).  A defendant is entitled to qualified immunity only where "the record undisputably establishes that the defendant in fact was motivated, at least in part, by lawful considerations." *Stanley v. City of Dalton, Ga.*, 219 F. 3d 1280, 1296 (11th Cir. 2000)  That is not the case here:  the motivation of Parrott to discharge Tebo is a disputed fact for the jury to resolve.